Our third argument of the morning is in Appeal No. 251638, American Art Clay Company v. Cincinnati Insurance. Okay, Mr. Morgan, good morning. Hold on one second. Okay, whenever you're ready. Thank you, Judge Scudder, and may it please the court. This appeal is about a contract dispute, and like all contract disputes, it turns on the language the parties actually agreed to. Everyone agrees that the underlying bodily injury lawsuits here trigger American Arts Insurance coverage, and that means Cincinnati must defend those claims unless some policy exclusion clearly and unmistakably takes that defense away. So the appeal turns on what those policy exclusions say. And I'd like to begin with what American Art thinks ought to be its baseline, and that's a defense under the various policies bearing the 1996 exclusion language. The question when we look at that short exclusion is whether it clearly and unmistakably says that American Art will lose its insurance anytime someone falsely accuses it of having asbestos in its product. Can I ask you a clarification question? What is the 1993? What is the role of the 1993 policy in this case? Is it here merely as a vehicle for American Art to argue how we should construe the relevant policy, which is the 1996 policy, or is the 1993 policy somehow governing some of the underlying lawsuits, some of the clay was sold underneath the 1993 policy during that time period? Which one? Yeah, Judge, it's the latter. There are certain claims that would be subject to the 93 exclusion language under various policies, and then certain other claims that would be subject to the exclusion language from 1986. Okay, thanks. And so the question is, does that, starting with the 96 exclusion, does it clearly and unmistakably say they lose their insurance anytime someone falsely accuses them of having asbestos in their clay, even when the real world facts confirm that they don't? To be sure, insurance companies write those sorts of exclusions all the time. They write exclusions that are triggered by actual or alleged asbestos exposures or claimed asbestos exposures, or as an EBERT, a particular type of injury for which the insured may be held liable. Cincinnati didn't do any of that here. Instead, it drafted language that most naturally read applies only to actual asbestos exposures. At a minimum, even if that's not the most natural reading, it is one reasonable permissible reading of the 96 exclusion, and of course, any ambiguity must be construed in American art's favor. Now, for the most part, Cincinnati's brief doesn't want to talk about the actual language of the exclusions it wrote. It instead argues for what amounts to a one-size-fits-all policies common law rule that says courts may never look past the allegations in the lawsuit to the real world facts, no matter what the party's contract says about that. But that argument has a real problem, because it bumps up against the fundamental premise underlying the entire entirety of Indiana insurance law, and that's that insurance policies are contracts, and courts will enforce the party's bargain. So whether allegations, mere false allegations are enough to trigger an exclusion has to always turn on the actual exclusion language. Why do you need the word false in there? Under your prevailing, your predominant argument, don't you win if you're just talking about allegations and forget the word false? We do. We do. That's correct. Okay. And the problem with this sort of common law rule that Cincinnati argues for is actually worse than just that it looks past the actual contract language. Consider this. It is undisputed under Indiana law in cases like Mallon and the Supreme Court's decision in Freedline and various other cases, that when the allegations in a complaint clearly trigger coverage, the insurance company may always look beyond the allegations to the real world facts and may always deny coverage if the real world facts justify it. So here's the world as Cincinnati sees it. Courts must always look beyond allegations to the real world facts if it lets the insurance company deny coverage. But those very same courts may never look beyond allegations to the real world facts if it would require the insurance company to honor its contract. Can you talk a little bit about what seems very odd to me about your position is in all the duty to defend cases that we have across all kinds of states here. One key aspect of the eight corners rule and principles around the eight corners rule is that kind of at time zero or ex-ante, there can be real efficiency in a determination made on a duty to defend question. And here you're saying there's a duty to inquire, there's a duty to investigate, there's a duty to do more. And what is the more that you believe they should have done? You're going to say, in part, I think, well we have a letter from the Duke Medical School and we'll show them the letter from Duke Medical School. But Cincinnati Insurance is going to say, well you still have plaintiffs in court bringing tort claims alleging asbestos exposure. So maybe your Duke medical letter will mean that you win the tort litigation, that the plaintiff loses the tort litigation. I just don't understand what the content or what this whole duty to inquire is going to even entail. What's that going to look like on the ground? Their duty to inquire is primarily, I think, related to the bad faith claim. To be clear, what we're really talking about is their duty to defend unless and until an exclusion is triggered. And so what we have here is we have bodily injury claims and everyone agrees that... Yeah, but no, hold on. They're saying, how can the exclusion not be triggered? All the tort litigation is alleging that asbestos caused bodily injury. Because the exclusion doesn't say that mere allegations of an asbestos injury will take away their insurance. So that's why you say in your brief, right, I get that, but that's why you say in the brief. So there's some kind of, you can pick the term, I'm not hung up on the term at all. There's some kind of duty to investigate. They have to do more than just look at what's alleged in the tort litigation. On the bad faith claim, yes, but on the claim up on appeal is the contract claim. I think even if they had determined in the first instance that they don't think they have to cover, we might still have a breach of contract claim. We would say, well, wait a minute, your exclusion... So no aspect of your duty to defend claim, the contractual duty to defend claim, no aspect of it entails some kind of contention that they have to investigate or inquire or do something beyond the eight corners rule? It certainly does, that they have to look beyond that. But the point is... And what does that looking beyond entail? I mean, here, and you referenced this earlier, here I think it would have been as simple as turning to their decades long customer and asking two questions. Does your clay have asbestos in it and has it been tested? And if they'd asked those two questions, they would have gotten the Vanderbilt testing, they would have gotten the Duke University testing, all of which shows that there's no asbestos in these products. So the question here really comes down to, what's the contract say? So in the first instance, it's a bodily injury claim. That means that it's covered. Everyone agrees it's covered on the coverage question. And that means we have a right to a defense. The only way that defense gets taken away is if some exclusion clearly and unmistakably says, yeah, but if someone alleges that there's asbestos in your claim, you lose your coverage. And think of this kind of a simple example. Imagine a car owner who, like most car owners, has auto insurance. And like most policies, there is an exclusion for drunk driving. If that car owner is driving home from church one Sunday afternoon, completely sober, and gets into a fender bender, and a few months later gets sued, and the other driver in that lawsuit accuses them of being a drunk driver, no reasonable policy holder in their right mind would ever dream that they would have lost their insurance coverage for that lawsuit unless the exclusion clearly and unmistakably says that mere allegations are enough. And again, we see those sorts of exclusions all the time. Insurance companies write them all the time. So whatever sort of practical difficulties that Cincinnati might have. But it seems like you're saying that they have to get into the merits before making a duty to defend a termination, which would mean the client, the insured, could always say, well, those allegations are false. And you have to defend me because they've said there's asbestos in here, but there isn't. I think this court took that issue head on in Hayes-Lemers. The insured is entitled to a defense against even meritless claims. That's an accepted principle of Indiana insurance law. But the law, the Indiana insurance law, it says you have to look at the nature of the claim, not the merits. That's separate. And the nature of the claim here is a bodily injury claim. So that's a coverage question. The nature of the claim is that it's a bodily injury claim. It's covered. We're entitled to a defense unless an exclusion clearly and unmistakably takes that defense away. And an exclusion that says mere allegations of asbestos take it out of coverage, that would be enough. But we don't have that kind of exclusion here. Briefly before I yield the rest of my time for rebuttal, I want to talk briefly about the 1993 exclusion, Judge Jackson-Akimi, that you asked about, because we acknowledge that they at least have a toehold under that language to argue that mere allegations are enough, because the word claims at least appears somewhere in that exclusion. But that toehold doesn't get them very far, because the key language in the 93 exclusion, the which arise out of, are attributable to, or are anyway related to asbestos adjective phrase, modifies bodily injury and property damage. It doesn't modify the earlier noun claims. And so the most natural reading of the 93 exclusion and the reading consistent with the nearest reasonable referent canon is that a claim for bodily injury triggers the exclusion if it involves an actual asbestos exposure. And so here again, even if that's not the most natural reading, we would argue that's at least one permissible, reasonable reading of that language. And again, any ambiguity in the exclusion must be construed in American art's favor. If there are no other questions at this time, I'll yield for rebuttal. Thank you. Okay. Very well. Mr. Morgan. Mr. Garish, good morning. Good morning. Good morning. May it please the court, Jeff Garish on behalf of Cincinnati. This is really a single issue case. My friend has tried to parse it into a couple of sub-issues, but I think it's really mainly a single issue case. And the issue is whether claims for bodily injury caused by asbestos are potentially covered under the party's insurance contract, which specifically excludes bodily injury arising out of attributable to, or in any way related to asbestos in any form or transmitted in any manner. It is a very broad asbestos exclusion that applies plainly to preclude coverage. Judge Pratt got it exactly right, and that's why we think the court should affirm. Their main argument is that the exclusion doesn't apply because their products don't contain asbestos. The problem is that it is, as Judge St. Eve, you correctly noted, it's the nature of the claim that determines coverage, not its merits. That is the case, I think, in probably all 50 states. It's certainly the case in Indiana because the Indiana Supreme Court has specifically said so in the COPCO decision, and they've argued very strenuously in their brief that COPCO is no longer the standard, and yet the Indiana Supreme Court once again reiterated that standard in 2022 in the Ebert opinion. That remains the standard. It's the nature of the cause of action, not the merits of it that determines whether coverage exists. It seems like under Indiana law that the courts have been inconsistent on how they've applied COPCO, but they've been inconsistent on what you can look at up front rather than just the four corners of the underlying complaint that maybe you can look at other things, but they haven't been inconsistent on the nature versus merits piece. Exactly right, Judge. Exactly. And the Stroh decision from this court talked about various articulations. They've articulated it in different ways, but they've never retracted or moved away from the fact that it has to be that the nature of the cause of action determines coverage. And here's the thing, and this goes to Judge Scudder, your questions. I will stipulate there's some case law that says an insurer may look behind the allegations, but it doesn't get him anywhere. That's the problem. Their argument is we needed to look behind the allegations and find out that their products actually don't contain asbestos. He said it today. It doesn't help them because the nature of the claim is still bodily injury caused by asbestos. That's why it's not covered. Can I ask you, you do this for a living, and you'll know the answer to this, and Mr. Morgan can weigh in on it too. Suppose as a practical matter you just chose to defend. Cincinnati just made a choice. We'll defend. But we're going to defend with a reservation of rights. And the reservation of rights is there because as we read the underlying tort complaints, or as we construe them, these cases are all about asbestos causing bodily injury. We'll defend you. And then it turns out that that's exactly what the trials are about, as you expect. And whether American Art wins or loses the trials that way, could you at the end of all of that defense, could you seek contribution for the fees on the ground that we defended you on claims that were all about an exclusion in the policy? I don't know that there's any term in the insurance. It's a harder question than you think. I might do this for a living, but I'm not sure I know the answer. I think it depends on what's in the contract. I don't think there's anything in the insurance contract that talks about contribution of defense fees expended. I think the parties could agree to something that up front before defense was proffered. Oh, okay. So in your view, it's a contractual question entirely? I think so. I think so. And here, aside from their main argument, their fallback argument has been that there's an ambiguity in this exclusion. And Judge Pratt, I think, got it exactly right when she said that the mere fact that ambiguities are construed in favor of the insured doesn't mean what they're doing here is they're trying to invite judicial construction by creating ambiguities that don't exist. I think that's exactly right. Why shouldn't we look at the change in the language between 1993 and 1996 if our chief goal is to kind of divine the intent of the parties in contracting? The word claim was explicitly taken out. Should we ignore that? I don't think you need to ignore it, but I would say there's more than one way to write an exclusion. And I think with judicial decisions that are constantly telling insurers to use plain language, it makes perfect sense that insurers would alter their language at times. But the problem they have, the 1996 exclusion doesn't help them. The fact that the word claims isn't in there doesn't make any difference, because it still excludes coverage for bodily injury or property damage arising out of, attributable to, or any way related to asbestos in any form or transmitted. It's the only way they can be held liable. That's the problem. That's if the 96 is read as you suggest. I just read it literally, though. In 1993, American art was explicitly told, even if somebody accuses you of having asbestos in your product, we are not going to cover that. That's what the word claim is doing there. In 1996, if American art is sitting and watching the changes in its policy, they have been involved in these discussions, that explicit warning is not there anymore. So why shouldn't we credit their argument? Because the language wasn't changed in a way that makes any difference. It doesn't make any difference if the word claims isn't there. And I can prove this by citing the Indiana Supreme Court decision Ebert, which my colleague mentioned today. Ebert involved the exact same approach, the exact same approach as the 96 exclusion. Here's the exclusion in Ebert. Ebert involved an exclusion, and it was a liquor liability exclusion. And the exclusion said, and I'm quoting now, this insurance does not apply to liquor liability. It was the heading of the exclusion. And then it said, bodily injury or property damage for which any insured may be held liable by reason of causing or contributing to the intoxication of any person. It didn't involve, it didn't use the word claims. It didn't use alleged. It used the exact same approach as the 96 exclusion. And the Indiana Supreme Court unanimously held there's no duty to defend based on that exclusion because the claims were for damages that are governed by that exclusion. It's the exact same approach, and that's why they lose. That is completely fatal to their argument about the 1996 policy. Can you spend a minute on what do you understand the duty to inquire, the duty to investigate, the duty to take a look, phrase it how you prefer, what do you view it to entail, at least as American art would have it? Well, I think it entails a look behind the allegations to find out what's really going on at times. It depends on the allegations, the underlying complaint. So if they sent you a letter from the Duke Medical School, you'd either have to accept it on its face or what, hire a scientist to undertake a chemical evaluation of the talc? All of that just seems very counter to what many states talk about with a duty to defend being made up front, eight corners, efficiency, ambiguities, all that kind of stuff. This whole notion of we're going to have a scientific investigation or something. Or maybe their point is that you're duty bound to just accept the Duke Medical School letter. I don't know. Maybe. I don't either. But I think your instinct, Judge Scudder, is exactly right. There's no duty on the part of the insurer to accept anything that they say, especially from an expert or something that talks about what's really going on. But again, it doesn't matter here because even if you assume there's no asbestos in their products, it does nothing to change the nature of the claim. The nature of the claim is still bodily injury caused by asbestos. And if there is no asbestos in their products, they are going to win the underlying claim, but that doesn't have anything to do with the coverage, which is the nature of the underlying claim. And that's, again, exactly what COPCO said. COPCO even talked about, late in the opinion, it talked about the defense that the insured had that they forgot something. There was a slam dunk defense that they were going to win the underlying lawsuit. And COPCO said, okay, you might win, but it doesn't matter because it doesn't change the nature of the lawsuit, which is not covered under the language of the policy. I might be reading too much between the lines, and maybe Mr. Morgan is going to want to comment on this, but I read this as they're frustrated. And they're frustrated because they find themselves named in a bunch of tort cases where there are manufacturers of attic insulation and building material manufacturers. And here American Art, that manufactures a clay product for home artistic recreational purposes, is alleged to have asbestos in it. And so they say, we're just swept up in this, and we're brought along for the ride, and that's costly. But these claims are really against people that manufacture insurance insulation and building products and all that. And that's why you all at Cincinnati Insurance need to step up and defend us in this, because it's bogus. We're just, it's ridiculous. There's a flavor of that between the lines of these briefs. Is my mistaken on that? No, I'm sure they are frustrated that they were sued on baseless allegations that they have asbestos in their products. Because the lawsuits are not Jane or John Doe versus American Art. It's all these other, where you traditionally will see asbestos litigation. Right. And they were, again, I can understand why they're frustrated being sued for something that they claim is a baseless allegation. But again, their insurance contract that they agreed to contains asbestos exclusions that exclude coverage, which arise out of, are attributable to, or are in any way related to asbestos in any form or which may be transmitted in any manner. That's as broad as it gets. I mean, I have seen asbestos exclusions. There are narrower, where there might be a basis for finding an ambiguity as to whether this form of asbestos qualifies. But there is no, there's no wiggle room here. And they didn't have to agree to this language, but they agreed to it. And that's the problem. They agreed to an asbestos exclusion that governs these lawsuits, and as Judge Pratt correctly held. Now, they do also argue the 93 exclusion, and he mentioned it again today. And I would respectfully submit, this is a good indication of how hard they're trying to find an ambiguity that doesn't exist. Because in the trial court, they argued as to the 93 exclusion, that there was a missing closing comma. And Judge Pratt rejected that argument. Now they've abandoned that. Now they've got a completely new argument based on the reasonable, nearest reasonable reference canon. And they're saying that claims only applies to bodily injury or property damage. So they would read the exclusion, they say the only way the 93 exclusion could have applied is if they had drafted it to say this. And this is right on page 24 of their brief. They say the exclusion had to say, this insurance does not apply to claims for bodily injury or property damage, which are claimed to arise out of, claimed to be attributable to, or are claimed to be in any way related to asbestos. Look, you can always make any language more redundant. I mean, I think any clause could be more redundant if you wanted to. But that doesn't make the language as used in the 93 exclusion ambiguous. And Judge Pratt got that exactly right. There's no ambiguity in the language. And then their last argument as to ambiguity is that asbestos, the exclusion doesn't necessarily apply because of the form of the asbestos. And this is to your question, Judge Scudder. But again, the exclusion says in any form or which may be transmitted in any manner. So it doesn't matter if the type of asbestos that's alleged to be in their product is a different form than what other defendants involved. It just doesn't make any difference. So I'll be happy to answer any questions if the court has some. But I don't think I need to use the rest of my time unless there are questions. Okay. Hearing none, Mr. Parrish, thank you. Mr. Morgan. Thank you, Judge Scudder. Mr. Morgan, is your client prevailing on these underlying lawsuits? We don't have in the record any answer to that question. I actually don't know how far along any of them are of the 58 that are at issue here. But I want to talk about two things on rebuttal. The first is this idea about the nature of the claim. It's absolutely right that the case law talks about the nature of the claim, but that's the coverage question in the first instance. Once you establish coverage, the burden shifts to the insurer to say, okay, okay, but this exclusion clearly and unmistakably takes your right to defense away here. We have a right to a defense if we have coverage. And so we're here in the exclusion context where they have to prove their affirmative defense that an exclusion applies. So I want to make sure that we're not losing sight of the nature of the claim here as a bodily injury claim, and that triggers coverage in the first instance. Everyone agrees about that, including the district court judge. The second thing I want to talk about is this idea that there is an eight-corners rule in Indiana. And their argument, the latest word from this court in Hayes-Lemmers is that there's not, that COPCO actually never stood for an eight-corners rule in the first place. That's what this court concluded in Hayes-Lemmers, and that's, of course, consistent with the Indiana Supreme Court's decision in Harvey, which clearly looks beyond the allegations to the real-world facts. And it wasn't that it just forgot about COPCO, we know, because the Supreme Court cites COPCO in the Harvey case. Their response is to talk about the Ebert case from 2022, but there are three reasons why Ebert doesn't supply the answer here. First, the Supreme Court tells us in the first two paragraphs of that case that what it was really deciding is this efficient and predominant cause question that had split Indiana courts in the liquor-exclusion context. And we think we should take the Supreme Court at its word. We certainly think there's no good reason to think that what the Supreme Court was actually doing in Ebert was silently overruling its own unanimous decision in Harvey, silently overruling court of appeals decisions like selective insurance, North Vernon drop-forge, and Monroe guarantee, silently abrogating this court's decision in Hayes-Lemmers, and scores of district court cases, all squarely rejecting the eight corners rule under Indiana law. And that it was doing all of that without so much as even acknowledging that that body of law exists, much less discussing it or explaining why it disagreed with it. And the second reason we don't think Ebert supplies the answer here is, even if you thought the Supreme Court was silently doing all of that in Ebert, it would then make no sense for a Supreme Court that just said that courts can't look beyond allegations to the real-world facts to then in the very next paragraph of its opinion look beyond the allegations to the real-world facts. And that's exactly what Ebert does on the scope of employment question. And that takes me to the third reason why Ebert doesn't supply the answer here, because Ebert, like every insurance coverage decision, must be understood in the context of the actual contract language in front of the court. And there Ebert, and since I spoke about this, Ebert policy excluded particular types of injuries for which the insured may be held liable. That's the sort of exclusion triggered by mere allegations. For example, if our policy had that language, as we stand here today, we may be held liable. For all of our system's virtues, fact finders sometimes get it wrong. We may be held liable. And so if they had that sort of exclusion language here, they're absolutely right, it would apply. But they don't have it. What they don't get to do is write the exclusion they wrote, collect premiums on it for decades, and then come to court decades later and say, let us out of the bargain we struck. So for all of those reasons, we would ask that. Before we let you go, can I ask you a question, going back? You read Hayes-Lemmer's 2010 opinion pretty broadly. What language do you have in mind there where we held that Indiana law has not adopted the eight corners rule? Yeah, so first Judge Posner talks about how it's not at all clear that what the nature of the complaint means is just the allegations in the complaint. That could also mean the allegations in the complaint and the other information. And then I think it's the bottom of that same paragraph. Then the court goes on to look at the actual facts. The court goes beyond the eight corners in Hayes-Lemmer's. Okay, so I see how you get there. All right, very well. Thank you. Okay. Mr. Morgan, thanks to you and your colleague. Mr. Garrish, thanks to you. We appreciate the advocacy on both sides. We'll take the appeal under advisement.